# In the United States Court of Federal Claims

Nos. 22-1380C, 22-1425C, 22-1436C, 22-1460C, 22-1462C, 22-1477C, 22-1492C, 22-1519C, 22-1549C, and 23-441C
Filed: June 2, 2023
Re-issued: June 30, 2023[1]

| | |
|---|---|
| ALLICENT TECHNOLOGY, LLC, et al., | ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| THE UNITED STATES, | ) ) |
| *Defendant*, | ) ) |
| and | ) ) |
| BRIGHTPOINT, LLC, et al. | ) ) |
| *Defendant-Intervenors*. | ) ) |

## OPINION AND ORDER

Pursuant to Rule 59, Allicent has moved the Court to reconsider its opinion regarding the deficiency that the Agency assessed for Allicent's proposal regarding PWS Section 3.4.20. ECF No. 279. According to Allicent, I "committed clear error in accepting the Agency's waived argument about PWS Section 3.4.20" and when I found Allicent had not addressed Section 3.4.20 even though the Agency purportedly conceded that Allicent responded to that section. Allicent also contends that I committed clear error when I found that the Agency's argument was different than the "lack of detail" argument that I otherwise rejected.

Under Rule 59, I "may, on motion, grant a new trial or a motion for reconsideration on all or some of the issues . . . ." RCFC 59(a)(1). "To prevail on a motion to reconsider or amend the judgment, Plaintiffs must show extraordinary circumstances that justify the relief sought, as reconsidering or amending a judgment after its entry should be done sparingly." *Childers v. United States*, 118 Fed. Cl. 394, 395 (2014) (citations omitted). Allicent, therefore, "must establish a manifest error of law or mistake of fact." *Id*. And to demonstrate a manifest error, Allicent "must show '(1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to

---

[1] The Court initially filed this Opinion and Order under seal to allow the Parties to propose redactions. No redactions were proposed, so the Court releases the Opinion and Order in full.

prevent manifest injustice.'" *Id*. (quoting *Matthews v. United States*, 73 Fed. Cl. 524, 526 (2006)).  Here, Allicent argues my prior decision will result in a manifest injustice.  To do so, it must show an "'injustice that is apparent to the point of almost being indisputable.'" *Id*. (quoting *Martin v. United States*, 103 Fed. Cl. 445, 448 (2012)).  With these standards in mind, I consider each of Allicent's arguments in turn.[2]

Before turning to the merits of Allicent's motion, I turn briefly to the tenor of the motion itself.  I recognize that arguing that a federal judge has committed a clear error leading to a manifest injustice (as one must under Rule 59) can be a delicate matter.  Allicent goes out of its way to make clear that it is moving "very respectfully" or "respectfully" for reconsideration.  *See*, *e.g.*, ECF No. 279 at 1, 4, 8, 11-12 (stating how respectfully Allicent is moving seven times in just over 11 pages of briefing).  When reading the motion I braced for the worst, fearing that everything after the "respectfully" would be anything but.  *See*, *e.g.*, *Porch v. Univ. of Ill. at Chi., Sch. of Med.*, No. 21-CV-3848, 2023 WL 2429348, at *2-3 (N.D. Ill. Mar. 9, 2023) (reciting multiple "unnecessary potshots and hyperbole" that began with "very respectfully"); *see also* TALLADEGA NIGHTS: THE BALLAD OF RICKY BOBBY (Columbia Pictures 2006) ("Mr. Dennit: What did you say?  What was that?  Ricky: What? I said it with all due respect.  Mr. Dennit: That doesn't mean you get to say whatever you want to say to me.  Ricky: It sure as heck does! Mr. Dennit: No, it doesn't mean that --  Ricky: It's in the Geneva Conventions, look it up!").  Thankfully, Allicent's counsel handled this motion the way he has handled all of his motions before me in this case and others—professionally (and respectfully).  Counsel simply argues what he must under Rule 59 avoid anything close to unnecessary potshots or hyperbole.  My decision regarding Allicent's response to PWS Section 3.4.20 was one of the closer calls I had to make in these consolidated protests, and I appreciate the opportunity to provide further clarity to Allicent as to why I decided its protest the way that I did.

Allicent first contends that I committed clear error because I "entertained an argument that the Agency made for the first time in reply, while refusing to consider similar arguments for others."  ECF No. 279 at 4; *see also id*. at 5-8.  To be clear, I strictly enforced the rule that a party waives arguments it makes for the first time in its reply.  Indeed, Allicent cites to several instances in the decision where I did so.  *See* ECF No. 279 at 6.  As one example, I refused to consider several of SaiTech's disparate treatment arguments because SaiTech raised one set of arguments in its MJAR, but in its reply it abandoned those entirely and raised new and wholly distinct disparate treatment arguments.  *See*, *e.g.*, ECF No. 272 at 106-07.  I stand by those applications of the waiver rule.  Allicent also argues that the waiver rule applies to the Government as well as private parties.  I agree.  If anything in my prior decision implied otherwise, it was not intended.  I simply disagree with Allicent that the Government waived its arguments about Allicent's response, or lack thereof, to PWS Section 3.4.20.  A review of the briefing will help clarify the point.

---

[2] Under Rule 59, the nonmoving party may only respond with leave of the Court and "[t]he court may not rule in favor of a motion under this rule without first requesting a response to the motion."  RCFC 59(f).  Because I find the issues clear and am denying the motion, I have not sought a response from the Government before ruling on this motion.

2

Allicent spent three pages of its MJAR explaining how it believes its proposal satisfied PWS Sections 3.4.13, 3.4.18, 3.4.19, and 3.4.20, which Allicent responded to jointly in its proposal.  *See* ECF No. 168 at 27-30[3]; ECF No. 119 at AR 3862.  While it is true that the Government did not argue specifically the facts of each of these deficiencies in its Cross-MJAR, the Government did defend the Agency's evaluation.  It argued that Allicent merely disagreed with the Agency's evaluation of its technical proposal.  *See* ECF No. 203 at 30.  Thus, the Government argued: "Allicent has not demonstrated that *any* deficiency was wrongly assigned because of a deviation from the evaluation standard.  Nor has Allicent shown that *any* deficiencies were improperly assigned under the existing standard."  *Id*. at 32 (emphasis added).  According to the Government, "*[e]ach* of Allicent's challenges follows a similar pattern: it repeats the PWS Section, cherry picks and highlights some language from its proposal, proclaims that the language was sufficient to meet Commerce's requirements, and then decrees that the agency acted arbitrarily in deciding otherwise."  ECF No. 203 at 29-30 (citing ECF No. 168 at 18-28) (emphasis added).  And the Government argued:

> What Allicent's brief does contain though is a repeated and veiled critique of the technical evaluation.  As described above, *Allicent's argument that the agency deviated from the evaluation methodology consists of reiterating aspects of its proposal and proclaiming that it demonstrated a capability for that particular PWS Section*.  This is nothing more than an underhanded attempt to force the Court to analyze the "minutiae of the evaluation process," *E.W. Bliss*, 77 F.3d at 449, in the hopes that it will improperly substitute its own judgment on the technical merits.  *See Vanguard Recovery Assistance v. United States*, 101 Fed. Cl. 765, 784-85 (2011) ("[T]he role of the court is 'not to substitute its judgment for that of the agency,' but rather to determine whether the agency had a rational basis for its decision.") ((internal citation and quotation marks omitted)).  Instead, Allicent's argument consists entirely of subjective disagreement with the agency's conclusion, and this does not suffice to demonstrate arbitrary and capricious action.  *See CRAssociates, Inc. v. United States*, 102 Fed. Cl. 698, 717-18 (2012).

*Id*. at 30 (emphasis added).  The Government clearly defended the entirety of the Agency's evaluation and assignment of each deficiency, including the deficiency for PWS Section 3.4.20.

At this point, it bears repeating what that evaluation was.  According to the Agency, "[Allicent] *failed to address these requirements* [including PWS Section 3.4.20] *or* provide an approach to demonstrate capability."  ECF No. 130 at AR 26594 (emphasis added).  In other words, the Agency concluded that Allicent failed to respond to PWS Section 3.4.20.  It also found that Allicent failed to provide an approach to PWS Section 3.4.20.  And the Government's Cross-MJAR defended that evaluation.

---

[3] Allicent's motion cites to the page numbering in the ECF Header.  Consistent with customary practice, I cite to the consecutive pagination at the bottom of the pages.

In its response to the Government's Cross-MJAR, Allicent argued that the Government "only address[ed] the specifics of two of those five deficiencies, relying instead on big picture statements of the law intended to prevent the Court from taking a closer look at the Agency's technical evaluation and sparse descriptions of the basis for the assigned deficiencies." ECF No. 232 at 3. Allicent also reiterated its position that "in response to section 3.4.20, Allicent provided a thorough approach to knowledge wall integration, operations[,] and maintenance." ECF No. 232 at 8. The Government did not agree, and argued in its reply that:

> Commerce found the proposal deficient because Allicent's response [to PWS Section 3.4.20] "failed to address these requirements or provide an approach to demonstrate capability," as to a knowledge wall or video display integration and support. ECF 130 at AR 26594. Allicent's discussion of how it intended to provide separate video teleconferencing support did not meet PWS Section 3.4.20's requirement, thus providing a rational basis for Commerce to find the proposal deficient.

ECF No. 254 at 9. It is this argument that Allicent insists was waived that underlies its motion. ECF No. 279 at 7-8. Allicent also considers it clear error for me to have relied on this argument to rule against Allicent.

But as I explained above, what Allicent called the Government's "big picture statements" in the Government's Cross-MJAR defended the Agency's evaluation and preserved the argument that Allicent failed to address PWS Section 3.4.20. Therefore, I did not entertain an argument that the Government waived and conclude that there is no error, much less a clear error. Nor does my prior decision result in a manifest injustice (or any injustice for that matter).

This brings me to Allicent's second basis for reconsideration—that I clearly erred in finding that Allicent failed to respond to PWS Section 3.4.20 because the Agency conceded that Allicent responded to that section. ECF No. 279 at 11-12. As an initial matter, I do not understand Allicent's argument that "[t]he Agency never said Allicent 'did not respond' to 3.4.20." *Id*. That is *precisely* what the Agency said—that "[Allicent] *failed to address these requirements* [including PWS Section 3.4.20] *or* provide an approach to demonstrate capability." ECF No. 130 at AR 26594 (emphasis added). Here, it is important to note that the Agency wrote its evaluation in the disjunctive. Thus, it found that Allicent neither addressed the Section 3.4.20 requirement nor provided an approach.

I evaluated this deficiency the same way I did every other rating in this protest. Allicent insisted that it responded to PWS Section 3.4.20 and provided an approach. The Agency's contemporaneous evaluation, which the Government defended throughout, found that Allicent did not. Thus, the question for me was whether Allicent *clearly* responded to PWS Section 3.4.20's requirements or not. I reviewed Allicent's response to PWS Section 3.4.20 and concluded that "[t]here is nothing *on the face of Allicent's proposal* that responds to PWS Section 3.4.20 other than the inclusion of that section number in the header of the one-page section of Allicent's proposal responding to these four PWS Sections." ECF No. 272 at 22 (emphasis added) (citation omitted). I then went on to explain that what Allicent did, in fact, include in its response clearly applied to PWS Sections other than 3.4.20. That is what the

4

Agency concluded, and my explanation merely sought to show how that conclusion found support in the record.

I do not read the Government's reply to concede that Allicent responded to PWS Section 3.4.20. According to Allicent, the Government conceded that Allicent responded to PWS Section 3.4.20 when it argued that "'[h]ere, Allicent *again* identified what it intended to do to meet the requirements, without providing a detailed approach of how.'" ECF No. 279 at 10 (quoting ECF No. 254 at 9) (emphasis in original). Relying on "again," Allicent argues that this means the Government conceded that Allicent responded to the PWS Section 3.4.20 requirements. *Id*. Thus, according to Allicent, the "again" means that Allicent failed PWS Section 3.4.20 for the same reason that it received the other four deficiencies. *Id*.

I do not parse the Government's brief nearly as closely as Allicent does. For example, Allicent argues that the Agency faulted it on the other four deficiencies for "'parrot[ing] back PWS requirements.'" *Id*. (quoting ECF No. 254 at 7). But this language applied only to the evaluation of Section 3.1.2, not all the deficiencies. Similarly, the Government argued that Allicent failed to provide sufficient detail to satisfy Section 3.4.2. And, as Allicent recognizes, I was unwilling to allow the Government to supply a justification for the deficiency other than what the Agency provided in its evaluation. That is the same thing I am doing for Section 3.4.20. Again, the contemporaneous evaluation states that Allicent "failed to address" PWS Section 3.4.20 or provide an approach. That is what I evaluated.

Allicent next argues that the Government's brief conceded that Allicent "identified what it intended to do to meet the requirements" of PWS Section 3.4.20—i.e., it responded to the section. ECF No. 279 at 11. Here, the context matters. The entirety of the Government's argument was:

> Allicent grouped its response to this PWS section [3.4.20] with responses to several other PWS sections under its "Video & Video Teleconference Installation, Operations & Maintenance" header. Here, Allicent again identified what it intended to do to meet the requirements, without providing a detailed technical approach of how. Commerce found the proposal deficient because Allicent's response "failed to address these requirements or provide an approach to demonstrate capability," as to a knowledge wall or video display integration and support. Allicent's discussion of how it intended to provide separate video teleconferencing support did not meet PWS Section 3.4.20's requirement, thus providing a rational basis for Commerce to find the proposal deficient.

ECF No. 254 at 9 (internal citations omitted). I do not share Allicent's view that the second sentence concedes the very argument that the Government makes in the third and fourth sentences. A better read of the Government's argument is that Allicent grouped several sections together and provided information about how it intended to do some of that work, but nothing that clearly responded to PWS Section 3.4.20. That is how I read the Government's argument when writing the prior decision and that is how I read it now.

Finally, Allicent argues I made a clear error in finding that Allicent did not respond to PWS Section 3.4.20 because the Government's purportedly "belated explanation" was that Allicent's response "lacked a 'detailed technical approach.'" ECF No. 279 at 11. But as I have explained above, that is neither what the Agency found nor what the Government argued.

In the end, this evaluation presented a close call. I evaluated the Agency's conclusion that Allicent "failed to address" PWS Section 3.4.20 or provide an approach. The fact remains that there is nothing on the face of Allicent's proposal that addresses the PWS Section 3.4.20 requirements. Thus, the Agency's evaluation that Allicent "failed to address" these requirements was rational and supported by the record. Therefore, I do not find an error in my prior analysis, much less a clear one.

For the reasons stated above, the Court denies Allicent's motion to reconsider, ECF No. 279.

IT IS SO ORDERED.

s/ Edward H. Meyers  
Edward H. Meyers  
Judge